UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES ARTHUS[1] DESKINS, JR.,

    Plaintiff,

v.                                                                                          Case No: 2:15-cv-283-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Plaintiff James Deskins seeks judicial review of the denial of his claim for Social Security disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs and the applicable law. For the reasons discussed herein, the decision of the Commissioner is AFFIRMED.

### I.  Issues on Appeal[2]

Plaintiff raises three issues on appeal: (1) whether substantial evidence supports the Administrative Law Judge's ("ALJ") determination of Plaintiff's residual

---

[1] Plaintiff's Complaint lists his name as "James Arthus Deskins" (Doc. 1); however, everywhere else on the record, it appears as "James Arthur Deskins." *See* Doc. 17 generally.

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), *cited in Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013).

functional capacity ("RFC"); (2) whether substantial evidence supports the ALJ's credibility determination; (3) whether substantial evidence supports the ALJ's finding that Plaintiff can adjust to other work. Because the decision of the Commissioner is supported by substantial evidence, and the Plaintiff has not shown any reversible error, the decision will be affirmed.

II.     Procedural History and Summary of the ALJ's Decision

On June 21, 2011, Plaintiff filed his application for a period of disability and DIB, and protectively filed his application for SSI. Tr. 200-16. Plaintiff's applications allege disability beginning on August 1, 2009 due to lower lumbar spine problems. Tr. 200, 207, 234. The claims initially were denied on July 6, 2011 and upon reconsideration on October 5, 2011. Tr. 129-40, 149-53. Plaintiff requested and received a hearing before the ALJ on August 22, 2013, during which he was represented by an attorney. Tr. 35, 172. As of the date of the hearing, Plaintiff was forty years old and had completed his twelfth grade education; however, he did not have a high school diploma. Tr. 39. Plaintiff and Vocational Expert ("VE") Ileana Chapman testified at the hearing. The ALJ issued an unfavorable decision on September 20, 2013. Tr. 34.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2013. Tr. 20. At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since August 1, 2009, the alleged onset date. *Id.* At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease of the lumbar spine and

affective disorder." *Id.* At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." Tr. 21. Taking into account the effect of all of Plaintiff's impairments, the ALJ determined that Plaintiff had the RFC to perform sedentary work,[3] with the following limitations:

> [Plaintiff] can lift twenty pounds occasionally and ten pounds frequently. He can stand and/or walk three hours in an eight-hour workday, and sit for six hours in an eight-hour workday. The claimant can perform unlimited pushing and pulling within the exertional limitations above. Furthermore, he can occasionally climb ramps and stairs; occasionally stoop, bend, crouch, and crawl. The claimant can frequently balance; however, he should never climb ladders, ropes, or scaffolds. He can perform handling without any limitations. Additionally, the claimant can understand, remember, and carry out simple instructions. He can perform work requiring occasional interaction with the public, coworkers, and supervisors but involves only occasional decision-making.

Tr. 22. The ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence and the limiting effects of the symptoms were not fully credible. Tr. 22-23. Next, the ALJ found that Plaintiff is unable to perform any of his past relevant work as a painter/shipyard, golf cart mechanic, and small engine mechanic. Tr. 28. At step five, in considering Plaintiff's RFC, age,

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 404.1567(a), 416.967(a).

education, and work experience in conjunction with the Medical-Vocational Guidelines and relying on the VE testimony, the ALJ found that Plaintiff is capable of performing other work that exists in significant numbers in the national economy, namely those of surveillance system monitor, document preparer, and addressing clerk. Tr. 29. The ALJ concluded that Plaintiff has not been disabled through the date of the decision. *Id.* On March 2, 2015, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. Accordingly, the ALJ's September 20, 2013 decision is the final decision of the Commissioner. Plaintiff filed an appeal in this Court on May 4, 2015. Doc. 1. Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review. Docs. 18-19.

### III. Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. § 404.1520; 416.920. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant

can perform given the claimant's RFC, age, education, and work experience.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

IV. Discussion

    A. *Whether substantial evidence supports the ALJ's determination of Plaintiff's RFC*

On August 20, 2011, Plaintiff's treating physician, Donald L. Erb, D.O., completed a very restrictive residual functional capacity questionnaire. Tr. 333-34. Plaintiff argues that although the ALJ accorded "some weight" to Dr. Erb's opinion and found this opinion to be "supported by clinically diagnostic findings," he nevertheless did not adopt all of Dr. Erb's opined limitations, and failed to explain why. Doc. 22 at 14. Thus, according to Plaintiff, the ALJ erred by excluding all of the opined limitations from the RFC without explanation, rendering the RFC determination unsupported by substantial evidence. Doc. 22 at 15. The Commissioner responds that the ALJ properly gave Dr. Erb's opinion reduced weight, and not controlling weight, and the ALJ sufficiently explained that Plaintiff was not as limited as Dr. Erb opined. Doc. 23 at 4-9.

The RFC is the most that a claimant can do despite his limitations. *See* 20 C.F.R. § 404.1545(a). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a). The claimant's age, education, work experience, and whether he can return to his past relevant work are considered in determining his RFC, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a

claimant's ability to do work despite his impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

Here, the ALJ considered Plaintiff's testimony, his daily activities, his medical history, and medical source opinions. Tr. 22-28. At issue is the opinion of Dr. Erb, dated August 20, 2011.[4] On this date, Dr. Erb completed an RFC questionnaire, which was very restrictive, and indicated that Plaintiff could only sit for thirty minutes and stand/walk for thirty minutes at a time, could sit for a total of three hours and stand/walk for a total of three hours in an eight-hour workday, that he could occasionally lift ten pounds and frequently lift less than ten pounds with limitations for handling, reaching, and fingering. Tr. 26, 333-34. Dr. Erb further opined that Plaintiff would need to take a twenty minute unscheduled break in an eight-hour workday and that he would need a job that permits shifting positions at will from sitting, standing, or walking. Tr. 333. Moreover, Dr. Erb estimated that Plaintiff would likely be absent from work more than four times per month due to his impairments or treatment. Tr. 334.

Plaintiff takes issue with the ALJ giving this opinion "some weight" but not accounting for all of the opined limitations in the RFC. Doc. 22 at 13-16. Specifically, although Dr. Erb opined that Plaintiff can sit for a total of three hours in an eight-hour workday, the RFC determined by the ALJ states that he can sit for six

---

[4] As the Commissioner points out, Dr. Erb issued another opinion in October, 2012 (Tr. 281-282), to which the ALJ gave no weight. Tr. 26-27. Plaintiff has not challenged the ALJ's rejection of this opinion. *See* Doc. 22, Doc. 23 at 4 n.3.

hours in an eight-hour workday. Tr. 22, 333; Doc. 22 at 15. Although Dr. Erb opined that Plaintiff can never lift twenty pounds and has limitations for handling, reaching, and fingering, the ALJ's RFC states that he can occasionally lift twenty pounds and can perform handling without any limitations. Tr. 22, 334; Doc. 22 at 15. Moreover, the RFC does not account for the need to take any days off in a month. Doc. 22 at 15.

Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p; *Crawford*, 363 F.3d at 1159-60. Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips*, 357 F.3d at 1240); *Lewis*, 125 F.3d at 1440; *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996). "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

Although Plaintiff cites to decisions requiring that the ALJ state with particularity the weight given to medical opinions and the reasons why, the ALJ here adequately articulated specific justifications for discounting Dr. Erb's opinion. Tr. 22-28. The ALJ considered Dr. Erb's treatment notes from December 2010 to June 2011, which revealed that Plaintiff was working ten to twelve hours per day as a homebuilder. Tr. 26, 308-17. Dr. Erb's treatment notes from an August 17, 2011 visit, only three days before he completed the RFC questionnaire, in which Plaintiff presented with complaints of pain, describe physical examination results of Plaintiff being able to rise from a sitting to a standing position, to ambulate without the assistance of a cane, and to flex forward so that his fingertips are at the level of his knees. Tr. 304. Although these treatment notes state that Plaintiff had increased pain with rotation and extension of the lumbar spine, Dr. Erb did not note any range of motion limitations. Tr. 304. Moreover, the treatment notes state that Plaintiff appeared to be in "mild-to-moderate distress." *Id.*

In considering Dr. Erb's opinion, the ALJ also noted "this opinion was rendered at the claimant's request because he was applying for disability rather than for an attempt to seek treatment for his symptoms, which is certainly legitimate and deserves due consideration; however, the context in which it was produced cannot be entirely ignored." Tr. 26. Ultimately, the ALJ afforded it "some weight" because it "was supported by clinically acceptable diagnostic findings showing that the claimant was suffering *mild to moderate symptoms.*" *Id.* (emphasis added).

In addition, the ALJ considered Plaintiff's testimony. Tr. 22-28. On August 29, 2011 in his Function Report, Plaintiff stated that he is able to do light chores, mow the yard, go fishing, do woodworking, drive, and go shopping. Tr. 254-257. Plaintiff also stated he is able to lift thirty pounds on some days and twenty pounds on others. Tr. 257. At the hearing, Plaintiff testified that he washes the dishes, sweeps the kitchen, does landscaping around his house, and mows the yard. Tr. 54. He sometimes uses a cane to ambulate, although the cane was not prescribed. Tr. 53. Additionally, as noted, although Plaintiff alleged a disability beginning on August 1, 2009, he reported to Dr. Erb that from December 2010 to June 2011 he was working ten to twelve hours per day as a homebuilder. Tr. 308-17.

The ALJ also considered other evidence, which did not bolster Dr. Erb's opined limitations. Tr. 24-27. For instance, the ALJ compared Plaintiff's magnetic resonance imaging ("MRI") scans from 2010 and 2012. Tr. 24. The MRI scan from September 2010 showed a moderate disc bulge at L4-L5 with moderate to severe bilateral neuroforaminal narrowing. Tr. 330. The MRI scan from June 2012 showed that Plaintiff's degenerative changes were relatively stable from 2010. Tr. 328. During an emergency room visit in June 2012, in which Plaintiff presented with complaints of back pain, the ALJ noted that Plaintiff had very mild back pain with no muscle spasms, normal motor strength, intact sensations, and full and normal range of motion. Tr. 24, 371. In July 2013, consultative examiner Dr. Pascal Bordy, M.D., evaluated Plaintiff and noted that he appeared in no distress, had slight difficulty to stand from a sitting position and walked 100 meters around the office with a limp but

without a cane. Tr. 437. Physical examination from this visit revealed that Plaintiff had no joint pain or tenderness, no spastic or rigid movements, no muscle atrophy, and full motor strength. Tr. 438. He could walk on toes and heels bilaterally and perform a tandem gait. Tr. 439. The ALJ also noted that physical examination from this visit generally revealed normal findings except for some positive signs of lumbar spine pain, ability to squat halfway secondary to pain, and decreased range of motion in the lumbar spine only. Tr. 24, 439. The ALJ explained "[t]hese findings support the [RFC] in that the claimant's pain and reduced range of motion would preclude him from more than sedentary work with various postural limitations to prevent exacerbation of his symptoms." Tr. 24-25.

The ALJ also considered the opinion of the state agency medical consultant, Harry Beechman, M.D., issued on September 13, 2011. Tr. 109-11, 119-21. Dr. Beechman opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, he could stand and/or walk for a total of three hours, and sit for a total of six hours in an eight-hour workday. Tr. 109. He opined that Plaintiff could perform unlimited pushing and pulling, with exertional limitations. Tr. 109-10. He further opined that Plaintiff did not have manipulative, visual, communicative, or environmental limitations. Tr. 110. The ALJ gave this opinion great weight because he found that the limitations imposed were consistent with Plaintiff's subjective allegations of pain and his level of daily activities. Tr. 27, 109-11, 119-21.

Overall, the ALJ found that "the medical findings do not support the existence of limitations greater than those reported [in the RFC]." Tr. 23. Upon a review of

the record, the Court concludes that the ALJ did not err in reducing the weight he gave to Dr. Erb's August 2011 opinion, as the record reflects good cause for doing so, and the ALJ articulated his reasons for doing so. *See e.g.*, *Crawford*, 363 F.3d 1155; *Phillips*, 357 F.3d at 1241. Moreover, opinions on some issues, such as the claimant's RFC and whether the claimant is disabled or unable to work, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); SSR 96-5p. Thus, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability, and the ALJ was not required to adopt all of Dr. Erb's opined limitations. 20 C.F.R. § 404.1527(d)(1). Here, substantial evidence supports the ALJ's determination of Plaintiff's RFC.

> B. *Whether substantial evidence supports the ALJ's credibility determination*

Plaintiff next argues that the ALJ failed to make a proper credibility finding. Doc. 22 at 16-18. The Court reviews for substantial evidence the ALJ's determination that a claimant's assertions of pain are not credible. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). When assessing the credibility of subjective complaints, an ALJ considers: (1) evidence of an underlying medical condition; and (2) objective medical evidence either (a) confirming the severity of alleged symptoms, or (b) indicating that the medical condition could be reasonably

expected to cause symptoms as severe as alleged. *See* 20 C.F.R. §§ 404.1529, 416.929; *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. § 404.1529(c)(1); *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561. The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause. *See* 20 C.F.R. § 404.1529(c). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted).

Here, the ALJ found that there was an underlying medical condition; however, he did not find that objective medical evidence confirmed the severity of the symptoms alleged. Tr. 23. The ALJ considered Plaintiff's statements regarding the intensity and persistence of the symptoms to determine how the symptoms limit Plaintiff's capacity for work. Tr. 23. In August 2011, Plaintiff reported that his lower back always is aching and has stabbing pain, and his right leg constantly is burning and tingling. Tr. 261. He reported that his pain affects his sleep,

concentration, and cognitive thinking. Tr. 261-62. He reported that he can sit for only one to two hours at a time, and stand for no more than a couple of hours at a time. Tr. 264. As for Plaintiff's mental symptoms, he reported that he is experiencing severe depression and panic attacks. Tr. 261. Plaintiff reported that these impairments affect his lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, memory, completing tasks, concentration, understanding, getting along with others, and following instructions. Tr. 257. He reported he could lift thirty pounds on some days and twenty pounds on others. *Id.*

At the hearing, Plaintiff testified that he could not lift more than five pounds. Tr. 53. He testified that he would not be able to perform a job on a full time basis because he would have to frequently change positions from laying down to sitting down due to his pain. Tr. 46. He testified that he has shooting pains down the right side of his leg that require him to use a cane; however, he admitted that the cane was not prescribed. Tr. 48, 53.

In his opinion, the ALJ noted that Plaintiff's daily activities were inconsistent with his complaints. Tr. 23. The ALJ explained that Plaintiff's daily activities, especially those of cleaning, shopping, fishing, and driving, "indicate abilities above the sedentary exertional level." Tr. 26. Additionally, the ALJ found that Plaintiff's ability to "do hobbies such as woodworking suggests an ability to pay attention consistent with at least simple work." *Id.* Plaintiff argues that the ALJ mischaracterized Plaintiff's assertions regarding his daily activities in order to find that his level of activities undermines his disabling complaints. *Id.* at 17. In

support of this argument, Plaintiff asserts that although he reported he is able to do these daily activities, he indicated he is has a limited ability to perform them and does not perform them often. Doc. 22 at 18. However, where a claimant's description of diverse daily activities are in conflict with his claims of infirmity, it is proper for the ALJ to make an adverse credibility finding, so long as the ALJ provides a detailed factual basis for his credibility determination, as the ALJ did here. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

To further support his credibility determination, the ALJ considered Plaintiff's work activity since the alleged onset date. As noted, Plaintiff reported that he worked ten to twelve hours per day as a homebuilder from December 2010 to June 2011. Tr. 308-17. As the Eleventh Circuit has discussed, "[e]ven if a claimant's current employment status is not at the level of SGA,[5] it may indicate that [he] is able to do more work. The ALJ makes this determination by considering the claimant's physical, mental, and other abilities affected by the impairments." *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1571, 404.1545(b)-(d)). Thus, the ALJ properly considered Plaintiff's work activity in making his credibility determination, particularly where it conflicted with Plaintiff's allegations that he is unable to work due to his disability.

---

[5] Substantial gainful activity is work activity that is both substantial and gainful. Substantial work activity is work activity that involves doing significant physical or mental activities. Gainful work activity is work activity done for pay or profit, whether or not a profit is realized. 20 CFR 404.1572(a)-(b), 416.972(a)-(b).

The ALJ also considered Plaintiff's medication usage and explained that treatment notes indicate that medication helped reduce Plaintiff's pain. Tr. 26. He described that treatment notes occasionally note tenderness and occasional side effects, but the medications that caused side effects were reduced. *Id.* With respect to Plaintiff's mental limitations, the ALJ found that evidence indicates that medications helped control his symptoms. *Id.* The ALJ articulated that "despite his alleged limitations, the claimant has never sought treatment from mental healthcare professionals, which the undersigned does not find persuasive in terms of the claimant's allegations of suffering severe mood problems." *Id.*

Plaintiff contends that the ALJ erred when he found Plaintiff's complaints regarding his mental impairments not credible and finding that medications were effective in controlling his symptoms. Doc. 22 at 17, Tr. 26. Plaintiff argues that the ALJ failed to support his conclusion with any evidence. Doc. 22 at 17. Plaintiff points to a treatment note from November 15, 2011, in which he reported to his doctor that Celexa[6] was not strong enough. *Id.*, Tr. 322. By March 22, 2012, he was taking Prozac[7] and reported to his doctor that he still was having panic attacks. Tr. 409. By August 15, 2012, however, Plaintiff was prescribed 10mg of Lexapro[8]

---

[6] "Celexa (citalopram) is an antidepressant in a group of drugs called selective serotonin reuptake inhibitors (SSRIs). Celexa is used to treat depression." https://www.drugs.com/celexa.html

[7] "Prozac (fluoxetine) is a selective serotonin reuptake inhibitors (SSRI) antidepressant. Prozac affects chemicals in the brain that may be unbalanced in people with depression, panic, anxiety, or obsessive-compulsive symptoms. Prozac is used to treat major depressive disorder, bulimia nervosa (an eating disorder) obsessive-compulsive disorder, and panic disorder." https://www.drugs.com/prozac.html

[8] "Lexapro (escitalopram) is an antidepressant belonging to a group of drugs called selective

daily. Tr. 422. Treatment notes show that by December 19, 2012, Plaintiff's overall mood had "significantly improved"; Dr. Erb noted, "will hold off on psych referral" and that Lexapro was helping with Plaintiff's anxiety. Tr. 418. By April 10, 2013, Plaintiff appeared in no apparent distress, and neither the "depressed" or "anxious" options were checked off on the treatment notes. Tr. 413.

Plaintiff further complains that the ALJ erroneously discredited Plaintiff's claims of mental impairments because he never sought treatment from mental healthcare professionals. Doc. 22 at 17. Plaintiff claims this was erroneous because Plaintiff testified that he could not afford mental health treatment. *Id*. The Eleventh Circuit repeatedly has held that a claimant's inability to afford treatment excuses noncompliance with recommended courses. In *Dawkins v. Bowen*, the court explained that when the claimant cannot afford the prescribed treatment, and there is no other way to obtain it, the claimant is excused from noncompliance. 848 F.2d 1211, 1213 (11th Cir. 1988). If an ALJ relies primarily if not exclusively on evidence of noncompliance with prescribed treatment to make an adverse credibility determination, he has erred. Here, however, as the Commissioner correctly points out, the ALJ noted Plaintiff's mental health treatment was conservative and limited to his family physicians; noncompliance was not a basis, let alone the sole basis, for the adverse credibility finding.

---

serotonin reuptake inhibitors (SSRIs). Escitalopram affects chemicals in the brain that may be unbalanced in people with depression or anxiety. Lexapro is used to treat anxiety in adults. Lexapro is also used to treat major depressive disorder in adults and adolescents who are at least 12 years old." https://www.drugs.com/lexapro.html

In addition to the foregoing, the ALJ also relied on the opinion of the state agency's psychological consultant, to which he credited great weight, stating that plaintiff's anxiety is non-severe. Tr. 27, 107, 117. Plaintiff has not challenged this opinion or the weight afforded to it. *See* Doc. 22.

Moreover, as previously discussed in the analysis of the first issue above, the ALJ considered other objective medical evidence in making his credibility determination. Plaintiff argues that the ALJ erred when he found that Plaintiff "still has a normal range of motion, gait, motor strength, and sensation" and failed to support this assertion with any citation to the record. Doc. 22 at 16. The Commissioner correctly points out that Plaintiff has presented no authority requiring the ALJ to format his decision to include pinpoint citations. Doc. 23 at 13-14. Plaintiff's argument is undermined by the evidence regarding his daily activities, work history, and objective medical evidence, as outlined in this opinion. To the extent Plaintiff points to treatment notes that may contradict some portions of the evidence relied upon by the ALJ, "when there is credible evidence on both sides of an issue it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly." *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (*Richardson v. Perales*, 402 U.S. 389, 389-409 (1971)).

Therefore, upon a review of the full record, the Court finds that substantial evidence supports the ALJ's credibility determination. "The question is not . . . whether the ALJ could have reasonably credited [a claimant's] testimony, but

whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The record reveals no reversible error in the ALJ's assessment of Plaintiff's credibility concerning the intensity and persistence of Plaintiff's symptoms and their limiting effects on Plaintiff's ability to work. The ALJ compared Plaintiff's statements with his daily activities, his work activity, medication treatment and the objective medical evidence, and found his statements to be only partially credible as reflected in the RFC. "A clearly articulated credibility finding with supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562. The Court declines to do so here.

### C. *Whether substantial evidence supports the ALJ's finding that Plaintiff can adjust to other work*

Plaintiff's last argument is that the ALJ's errors in determining Plaintiff's RFC and credibility render the finding at step five unsupported by substantial evidence. Specifically, Plaintiff argues that the ALJ relied on a hypothetical that failed to reflect the significant and supported limitations opined by Dr. Erb. Doc. 22 at 18-19. Because the Court concludes that the ALJ did not err in reducing the weight afforded to Dr. Erb's opinion, the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported. *Crawford,* 363 F.3d at 1158.

### V. Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 19th day of August, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies to:
Counsel of record